UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MARIA CENTENO,

        Plaintiff,

v.                                            Case No. 19-cv-1865-bhl

KILOLO KIJAKAZI,[1]
Acting Commissioner of
Social Security Administration,

        Defendant.

---

## DECISION AND ORDER

---

        Maria Centeno seeks review of an April 5, 2019 administrative law judge's decision denying her claim for disability insurance benefits under the Social Security Act. For the reasons set forth below, the ALJ's decision is affirmed.

## BACKGROUND

        On January 3, 2017, Centeno filed a claim for social security benefits alleging disability beginning September 22, 2015 based on a laundry list of alleged ailments and diagnoses, including: dyshidrosis; elevated liver enzymes; familial benign essential tremor; varicose veins of the lower extremities; vitamin D deficiency; hypertension; degenerative joint disease of the hands, feet, knees; degenerative disc disease of the cervical, lumbar, and thoracic spines; tendonitis and rotator cuff tear of the left shoulder; fibromyalgia; chronic pain syndrome; obesity; adjustment disorder; depressive disorder; and somatic symptom disorder with chronic pain. The Social Security Administration (SSA) first denied Centeno's claim on April 24, 2017. R. 260. Centeno requested reconsideration, and the SSA again denied Centeno's claim on September 12, 2017. R. 264.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

Centeno appealed the denial of her claim to an ALJ, and an initial hearing was held on December 7, 2018. R. 27, 48. At the hearing, Centeno appeared with counsel and testified about her work history and health problems. She explained she had last worked in 2012 as a shipping and receiving clerk but was unable to physically perform her previous work because a herniated disc in her lower back, arthritis, and chronic pain prevented her from lifting more than two pounds. R. 53-58. She further explained that her problems with anger management prevented her from working. R. 63-64. Centeno also testified regarding the medications she has taken to help manage her symptoms, as well as her participation in various therapy programs. R. 64-67.

The ALJ also heard testimony from Joseph L. Entwisle, an impartial vocational expert. The ALJ asked Entwisle whether someone with the claimant's same age, education, work experience, and residual functional capacity would be able to perform Centeno's past jobs. Entwisle said no, but then identified a number of jobs existing in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. R.72-73. Entwisle opined that, given all of those factors, an individual would be able to perform the requirements of several representative occupations: (1) an individual with a light exertional limitation would be able to perform the requirements of housekeeper, drycleaner, and food prep worker and (2) an individual with a sedentary limitation would be able to perform the requirements of hand packager, office clerk, and freight, stock, and material mover by hand. R. 73-74. When asked what effect an individual's absenteeism or off-task behavior would have on available employment, Entwisle opined that an absence of one to two days a month is acceptable, and an employee with an off-task rate of 10% could remain indefinitely employed. R. 74-75. When limitations were added for an individual who would have angry outbursts on the job, Entwisle testified that most employers would give the employee one or two warnings, but continued outbursts or those of a physical nature would be met with termination. R. 76-77.

The ALJ issued a decision rejecting Centeno's claim on April 5, 2019. The ALJ performed the five-step sequential evaluation required under 20 C.F.R. §§404.1520(a) and 416.920(a) to determine whether Centeno was disabled. At step one, the ALJ concluded Centeno had not engaged in substantial gainful activity since September 22, 2015, the alleged onset date. R. 30. At step two, the ALJ concluded that Centeno had severe physical and mental impairments: degenerative disc disease of the cervical, lumbar, and thoracic spines; tendonitis and rotator cuff tear of the left shoulder; fibromyalgia; chronic pain syndrome; obesity;

adjustment disorder; depressive disorder; and somatic symptom disorder with chronic pain. R. 30. At step three, the ALJ concluded that the evidence did not support a finding that the severity of any of Centeno's impairments, either singly or in combination, was sufficient to meet any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P App. 1. R. 30-32.

The ALJ then determined that Centeno retained the residual functional capacity to perform light work as defined in 20 C.F.R. §§404.1567(b) and 416.967(b), but with the following limitations: she would be limited to performing simple, routine, and repetitive tasks with only occasional changes in the work setting and only occasional decision-making. She would be able to perform work that involved no interaction with the public and occasional interaction with her co-workers, including supervisors. Additionally, the claimant would be limited to work that would allow individually performed work tasks. R. 32-40. With these limitations, at step four, the ALJ found Centeno was unable to perform any past relevant work. R. 40-41. At step five, however, the ALJ found Centeno could perform work existing in significant numbers in the national economy. R. 41-42. Because the ALJ found Centeno was capable of making a successful adjustment to other work, he concluded she was not disabled under sections 216(i) and 223(d) of the Social Security Act. R. 42.

Centeno appealed the ALJ's decision to the Appeals Council, which denied her request for review on November 14, 2019. R. 1. Centeno filed this appeal on December 19, 2019.

## LEGAL STANDARD

The Commissioner's final decision on the denial of benefits must be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted). The Supreme Court has instructed that "the threshold for such evidentiary sufficiency is not high." *Id*. In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (internal quotations omitted). In reviewing the entire record, this Court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir.

1998). Judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)).

## ANALYSIS

On appeal, Centeno has requested remand or reversal of the ALJ's decision based on three issues. (ECF No. 10.) First, Centeno argues that the ALJ failed to properly weigh the medical opinion evidence of three treating sources. Second, Centeno argues that the ALJ failed to properly determine her residual functional capacity. Finally, she argues that the ALJ failed to properly evaluate her subjective statements. Because the record has sufficient evidence to support the ALJ's decision on all of these challenges, Centeno's appeal must be rejected.

### I. The ALJ's Weighing of Centeno's Treating Providers' Opinions Was Supported by Substantial Evidence.

Centeno's first argument on appeal is that the ALJ wrongly discounted the opinions of her treating medical providers: Cynthia Franzolin, LPC, Alicia Broeren, MD, and Suby Panichikudiyil, APNP. This argument fails because the record shows the ALJ considered the opinions of each of these providers and adequately explained his reasons for not embracing them.

#### A. The ALJ Properly Addressed the Opinions of Centeno's Mental Health Counselor, Cynthia Franzolin, LPC.

Centeno complains that the ALJ improperly assigned "little weight" to the opinion of her mental health counselor, Cynthia Franzolin, LPC, NCC. In particular, Centeno argues the ALJ failed to provide good reasons and grossly misconstrued the record when rejecting the limitations Franzolin listed on a mental impairment questionnaire. (ECF No. 10 at 8-13.) Because substantial evidence supports the ALJ's weighing of Franzolin's opinions, this challenge fails. *See Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (holding substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

According to the medical records presented to the ALJ, Centeno's sessions with Franzolin extended from September 25, 2015 to July 23, 2018, with an eight-month gap in 2017. R. 852-988. During that time period, on December 8, 2017, Franzolin completed a Mental Impairment Medical Source Statement. R. 752-56. On the statement, Franzolin opined that Centeno would likely need to lie down for two hours during the workday due to severe fatigue and related symptoms, would have difficulties interacting with or working in proximity to others,

would miss three days of work each month due to her "depressive symptoms" and "lethargy," and would need unscheduled breaks from work two to three times a day. She also indicated that Centeno's difficulties persisting with tasks and maintaining pace/efficiency would cause her to be less than fifty percent as efficient as the average worker, that Centeno exhibited "marked" limitations in her ability to interact with others and concentrating, persisting, or maintaining pace, and that Centeno's mental disorder had been "serious and persistent" throughout the past two years. R. 752-56.

The ALJ gave due consideration to Franzolin's opinions but decided to assign them "little weight." R. 40. According to the ALJ, Franzolin's opinions concerning Centeno's limitations were not supported by the evidence. *Id*. The ALJ noted, with references to the record, that Centeno typically did well with medications and exhibited essentially normal mental status exams even when her symptoms were exacerbated. *Id*. (citing Hearing Record Exhibits BlF [R. 488-512], B2F [R. 513-558], B3F [R. 559-619], B4F [R. 620-653], B5F [R. 654-56], Bl3F [R. 775-804], Bl4F [R. 805-48]). The ALJ further observed that Centeno had presented as cooperative with examiners, and during periods of high irritability Centeno reported that her frustrations were generally in relation to family issues. *Id*. As for her chronic pain and somatic symptoms, the ALJ referenced evidence which continued to indicate that Centeno's pain was stable, and she retained the ability to perform daily activities. *Id*. (citing BlF [R. 488-512], B2F [R. 513-558], B3F [R. 559-619], B4F [R. 620-653], B5F [R. 654-56], Bl3F [R. 775-804], Bl4F [R. 805-48]). These explanations are sufficient under the law.

Although Franzolin is a licensed and certified clinical professional counselor, she is not an "acceptable medical source" under Social Security Ruling 06-03p ("SSR 06-03p"). Instead, she is an "other source." *See* 20 C.F.R. §404.1513(d)(1) (effective Sept. 3, 2013 – March 26, 2017) (therapists expressly included as "other sources"). "Other sources" cannot establish the existence of a medically determinable impairment, but "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p. When evaluating opinions from medical sources who are not "acceptable medical sources," the "weight to which such evidence may be entitled will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications, the issue(s) that the opinion is about, and many other factors." *Id*.

Social Security Ruling 06-03p further recognizes that while "the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,'" those "same factors *can* be applied to opinion evidence from 'other sources.'" SSR 06-03p (emphasis added). Thus, an ALJ may consider "[1] How long the source has known and how frequently the source has seen the individual; [2] How consistent the opinion is with other evidence; [3] The degree to which the source presents relevant evidence to support an opinion; [4] How well the source explains the opinion; [5] Whether the source has a specialty or area of expertise related to the individual's impairment(s); and [6] Any other factors that tend to support or refute the opinion." *Id*. An ALJ commits reversible error when he or she rejects an "other medical source" opinion for being contradicted by the objective medical record but fails to identify what specific evidence contradicts the opinion. *Phillips v. Astrue*, 413 F. App'x 878, 884 (7th Cir. 2010) (remanding, in part, due to ALJ's failure to identify what evidence contradicted other source's findings). That is not the case here. Although the ALJ did not explicitly discuss each of the factors contemplated in SSR 06-03p and §404.1527, he identified specific evidence in the record that contradicted Franzolin's opinion. *See* R. 38, 40. This is sufficient. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (noting ALJ "must build a logical bridge from evidence to conclusion"); *Elder v. Astrue*, 529 F.3d 408, 415-16 (7th Cir. 2008) (affirming denial of benefits even though ALJ discussed only two regulatory factors).

Centeno argues the ALJ ignored evidence that undermined his conclusions – primarily by failing to account for the work-preclusive nature of Centeno's anger issues and overstating her minimal ability to perform activities of daily living. (ECF No. 10 at 10-12.) However, the ALJ did not overlook Centeno's difficulty when engaging in daily activities or overstate her abilities. He acknowledged Centeno's reports of chronic pain, anger, irritability, and anxiety, as well as her confrontations with people and self-isolation to avoid conflicts with others. R. 31, 33, 36 (citing B15F [R. 849-1001]). The record shows that although Centeno reported ongoing mental health symptoms from 2016 to 2018, she also made a number of positive statements to Franzolin about her functioning and treatment. *See* R. 891, 893, 899, 904, 912, 979. Likewise, during a similar time period, Centeno reported to her treating psychiatrist, Michael J. Ewing, MD, that she was doing well on her medications. R. 895, 908, 926, 932, 943, 975, 981. The ALJ properly reviewed all of these issues and acted within his discretion in discounting Franzolin's opinions. *See* SSR 06-03p ("the adjudicator generally should explain the weight given to opinions from ...

'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning"). This Court will not substitute its judgment for that of the ALJ. *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) ("Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'") (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

### B. The ALJ Did Not Err in his Treatment of the Opinions of Alicia Broeren, MD and Suby Panichikudiyil, APNP Concerning the Limiting Effects of Centeno's Pain.

Centeno next argues the ALJ erred in assigning "little weight" to the opinions provided by two treating providers concerning the limiting effects of her pain. (ECF No. 10 at 13-16.) This challenge to the ALJ's ruling is also refuted by the record.

Centeno's primary care physician is Alicia Broeren. On January 26, 2018, Dr. Broeren completed a musculoskeletal/fibromyalgia impairment medical assessment form listing diagnoses of chronic pain, cervical and lumbar disc bulges, fibromyalgia, and recurrent depression. R. 760. She indicated that Centeno's psychological factors had an important role in causing or exacerbating her experience of somatic complaints. *Id*. Dr. Broeren further opined that Centeno's symptoms would cause her to be "off task" more than 30% of the workday and cause her to perform at less than 50% efficiency; that she could stand/walk about four hours and sit about four hours in an eight-hour work day; that she would need an average of eight unscheduled breaks of at least 10 minutes during an eight-hour workday; that she would need the assistance of a walker or cane for both standing and walking; that she could occasionally lift no more than 10 pounds; and that she could occasionally use her hands and fingers, right and left. R. 761-62. Finally, Dr. Broeren indicated that Centeno exhibited variable functioning and would likely be absent from work four days per month due to medical treatment or "bad days" with symptoms. R. 762.

The ALJ gave "little weight" to Dr. Broeren's opinions. R. 39. The ALJ found the evidence did not support any greater limitation than the light exertional level. He noted Centeno's physical findings were mild, with diagnostic findings in the mild to normal range. *Id*. (citing B1F [R. 488-512], B2F [R. 513-558], B3F [R. 559-619], B4F [R. 620-653], B5F [R. 654-

56], Bl3F [R. 775-804], Bl4F [R. 805-48]). He further stated Centeno was repeatedly noted to do well on medication, which allowed her to function and complete her daily activities. *Id*. The record demonstrates that the ALJ reviewed but did not fully accept Dr. Broeren's opinions. And, of course, the ALJ was not *required* to accept Dr. Broeren's views over other evidence in the record. As the Seventh Circuit has explained, "[f]or claims filed before March 2017, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and consistent with substantial evidence in the record." *Johnson v. Berryhill*, 745 F. App'x 247, 250 (7th Cir. 2018) (citing 20 C.F.R. §404.1527(c)(2); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016)). As discussed below, because the ALJ supported his rejection of Dr. Broeren's opinion with substantial evidence, he was not patently wrong in determining her opinion was not entitled to controlling weight.

In challenging the ALJ's handling of Dr. Broeren's opinions, Centeno argues the ALJ misconstrued the record by only considering the objective medical evidence and discounting evidence that psychological factors may have caused or exacerbated her *experiences* of pain. (ECF No. 10 at 13-14.) Centeno correctly states that the Administration's own regulations prohibit an ALJ from rejecting a claimant's statements about the intensity and persistence of pain or the effect those symptoms have on a claimant's ability to work "*solely* because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. §404.1529(c)(2) (emphasis). But the ALJ did not do that here. The regulations also provide that when determining the extent to which pain affects a claimant's capacity to perform basic work activities, an ALJ is required to evaluate the claimant's statements *in relation to* the objective medical evidence. 20 C.F.R. §404.1529(c)(4). The ALJ did just that. *See* R. 36, 38 (recognizing diagnosis of somatic symptom disorder). The ALJ considered the objective evidence along with the assessment of fibromyalgia and chronic pain syndrome by rheumatologist Geoffrey C. Nkwazi, MD, along with the contrary opinions of consultative examiner Neal Pollack, DO, and rheumatology consultant, Alvin Wells, MD. R. 35-36 (citing B4F [R. 623-32], B5F [R. 654-550], B14F [R. 830-34]). The ALJ ultimately gave Centeno the "benefit of the doubt" and found her fibromyalgia was a severe impairment that warranted some limitations. R. 36. That finding was not patently wrong. *Overton v. Saul*, 802 F. App'x 190, 192 (7th Cir. 2020).

Centeno further argues that the ALJ's characterization of Dr. Broeren's diagnostic findings as being in the "mild to normal" range misconstrued the record. (ECF No. 10 at 15.) Centeno claims the ALJ was inappropriately "playing doctor" when interpreting Centeno's diagnostic imaging results as indicative of mild impairment and pain. (ECF No. 10 at 15.) Centeno's argument misstates the ALJ's determinations; the ALJ did not *interpret* the imaging but instead relied upon the interpretations of medical professionals. R. 35; *see*, *e.g*., R. 655 (Neal Pollack, DO interpretation: "Lumbosacral x-rays showed some minimal narrowing at the L5-S1 interspace with mild scalloping of the vertebrae with no other major abnormalities. Left shoulder x-rays were normal."); R. 770 (physician interpretation of 6/7/2013 MRI of cervical spine: "Minor disk bulges efface the thecal sac at C5-C6 and C6-C7. No neural foraminal stenosis."); R. 772 (physician interpretation of 10/27/2014 MRI of thoracic spine: "Minor levoconvex scoliosis associated with lower lumbar posterior facet arthropathy.... No substantial disc herniation, spinal canal stenosis nor cord impingement in the thoracic spine.").

The ALJ also assigned great weight to the opinion of State Agency medical consultant Pat Chan, MD, who after reviewing the record – which included Centeno's own statements, treatment notes, MRIs, and x-rays – opined that Centeno's physical impairments did not preclude her ability to perform light work. R. 38 (citing B3A [R. 172-81]). Thus, substantial evidence supported the ALJ's low weighting of Dr. Boeren's opinion. *See* R. 542-804 (pain management providers reporting medications allowed Centeno to function and complete daily activities); R. 655, 770, 772 (mild impairments on x-rays and MRIs); R. 830-34 (rheumatology consult noted full range of motion, normal reflexes, and motor functions).

The Court notes that when an ALJ does not give a treating source's opinion controlling weight, the ALJ must still consider a number of factors in determining the value the assessment merits, including the length, nature, and extent of the claimant's relationship with the treating source; the frequency of examination; whether the opinion is supported by relevant evidence; the opinion's consistency with the record as a whole; and whether the treating source is a specialist. *See* 20 C.F.R. §§404.1527(c), 416.927(c); *see also Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). After assigning "little weight" to Dr. Broeren's opinion, the ALJ failed to discuss those factors expressly – namely whether Dr. Broeren was a specialist; the frequency of examinations; and the length, nature, and extent of Centeno's relationship with Dr. Broeren. This omission does not always merit remand, however, when – as in this instance – the doctor was not a

specialist and the frequency of examinations was limited.  *See, e.g., Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021) (holding that ALJ affording treating physician's opinion only "partial weight" without marching through §404.1527(c)(2) factors was harmless error); *Ray v. Saul*, 861 F. App'x 102, 106 (7th Cir. 2021) (holding that even if ALJ had failed to expressly consider §404.1527(c) factors, any error was harmless because treating physician's limited treatment notes showed little more than claimant's reported symptoms and her opinion conflicted with the conclusions of the agency consultants).  If the reviewing court is convinced the ALJ would reach the same result on remand, the error in applying the correct legal standard is harmless and a remand is not required.  *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).

Based on the medical records presented to the ALJ, Dr. Broeren's examinations of Centeno were limited – both in frequency and purpose of visit.  Dr. Broeren saw Centeno only five times between September 2015 and December 2016.  R. 488-508.  On September 18, 2015, November 11, 2015, and December 21, 2015, Centeno had follow-up appointments with Dr. Broeren regarding her depression and medication review.  R. 488-99.  On May 20, 2016, Centeno saw Dr. Broeren because she needed a letter to excuse her from jury duty on account of reportedly being unable to sit for more than 30-45 minutes at a time.  R. 500.  Centeno next saw Dr. Broeren on December 22, 2016, when she was assessed for abdominal pain, perimenopausal concerns, and routine lab screening.  R. 504.  The ALJ also gave "good reasons" to support the weight he assigned to Dr. Broeren's opinion.  *See* 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).  Ultimately, "while the treating physician's opinion is important, it is not the final word on a claimant's disability."  *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996) (quotation omitted); *see also Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (noting ALJ may discount treating physician's opinion if it is inconsistent with the opinion of a consulting physician, or when the opinion is internally inconsistent, as long as he minimally articulates his reasons).  Any error in the ALJ's failure to articulate the §404.1527(c) factors is harmless.  *Karr*, 989 F.3d at 513.  This Court will not substitute its judgment for that of the ALJ's by reweighing the evidence.  *Id.*

Centeno next argues the ALJ erred in assigning "little weight" to the opinions provided by one of her pain management providers, Suby Panichikudiyil, APNP.  (ECF No. 10 at 13-16.)  This argument is also refuted by the record.

Based on the medical records, Centeno's primary care provider referred her to Advanced Pain Management, where she sought treatment between September 2015 and August 2018. R. 513-58, 722-41, 775-804.  On January 9, 2018, Panichikudiyil completed a medical assessment form for musculoskeletal/fibromyalgia impairment and listed diagnoses of chronic pain, disorders of the cervical and lumbar discs, and fibromyalgia.  R. 757.  She also indicated that Centeno's psychological factors had an important role in causing or exacerbating her experience of somatic complaints.  *Id*.  Panichikudiyil opined that Centeno's symptoms would cause her to be "off task" 30% of the workday and cause her to perform at 50% efficiency; that she would need two unscheduled breaks of at least 10 minutes during an eight-hour workday; and that she would *not* need the assistance of a walker or cane.  R. 758.  Because Centeno had not received a Functional Capacity Evaluation, Panichikudiyil declined to provide an opinion regarding how long Centeno could walk or stand within an eight-hour workday; how much weight she could lift; whether she had any activity limitations with her hands or fingers; whether she exhibited variable functioning; or her likely rate of absence from work.  R. 758-59.

The ALJ gave "little weight" to Panichikudiyil's opinions for the same reasons he gave less weight to the opinions of Dr. Broeren, finding that the evidence did not support any greater limitation for Centeno than the light exertional level.  R. 39.  He noted Centeno's physical findings were mild, with diagnostic findings in the mild to normal range.  *Id*. (citing B1F [R. 488-512], B2F [R. 513-558], B3F [R. 559-619], B4F [R. 620-653], B5F [R. 654-56], B13F [R. 775-804], B14F [R. 805-48]).  He further stated Centeno was repeatedly noted to do well and be stable on medication, which allowed her to function and complete her daily activities.  *Id*.  This is sufficient under the law.  *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (noting ALJ is required to provide a sound explanation for decision to reject medical opinion).

Centeno makes the same arguments in opposition to the ALJ's weighing of Panichikudiyil's opinion:  that he (1) failed to evaluate the limiting effects of Centeno's pain based on her subjective complaints and psychological factors and (2) misconstrued the record by interpreting raw imaging as being indicative of mild impairment and pain. (ECF No. 10 at 14-15.)  For the same reasons stated above, substantial evidence supported the ALJ's low weighting of APNP Panichikudiyil's opinion.  *See* R. 542-834.  Although Panichikudiyil is a licensed advanced practice nurse prescriber, she is not an "acceptable medical source" pursuant to Social Security Ruling ("SSR") 06-03p.  Instead, like therapist Franzolin, Panichikudiyil is an "other

source." *See* 20 C.F.R. §404.1513(d)(1) (effective Sept. 3, 2013 – March 26, 2017). The Seventh Circuit has ruled that an ALJ commits reversible error when he or she rejects an "other medical source" opinion for being contradicted by the objective medical record but fails to identify what specific evidence contradicts the opinion. *Phillips v. Astrue*, 413 F. App'x 878, 884 (7th Cir. 2010). Here, the ALJ cited specific evidence in the record that contradicted Panichikudiyil's opinion.[2] R. 39 (citing BlF [R. 488-512], B2F [R. 513-558], B3F [R. 559-619], B4F [R. 620-653], B5F [R. 654-56], Bl3F [R. 775-804], Bl4F [R. 805-48]). The ALJ appropriately built "a logical bridge from evidence to conclusion." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The question here, however, is not whether Centeno has chronic pain syndrome and depressive disorder, but whether her conditions are of such severity that either by themselves or when considered with her other impairments, either rendered her incapable of performing work within the residual functional capacity determined by the ALJ. For this, we turn to Centeno's next argument.

## II. The ALJ's Assessment of Centeno's Residual Functional Capacity Is Sufficiently Supported.

Centeno's second main argument is that the ALJ's residual functional capacity assessment failed to account for her deficits with attention, concentration, or pace; variable functioning; and social deficits. (ECF No. 10 at 16-21.) On this issue, the ALJ determined that Centeno retained the residual functional capacity to perform light work as defined in 20 C.F.R. §§404.1567(b) and 416.967(b), but with the following limitations: she would be limited to performing simple, routine, and repetitive tasks with only occasional changes in the work setting and only occasional decision-making. She would be able to perform work that involved no interaction with the public and occasional interaction with her co-workers, including supervisors. Additionally, the claimant would be limited to work that would allow individually performed work tasks. R. 32-40.

---

[2] The ALJ also considered Panichikudiyil's treatment notes when assessing the opinions of the psychological consultative examiner. R. 39-40 (citing B2F [R. 513-53], B13F [R. 775-804]). Those records show that, while Centeno reported experiencing varying degrees of pain during her office visits, Panichikudiyil routinely assessed Centeno's pain as "stable," and noted her "medications allow[ed] her to function and complete daily activities." *See* R. 543, 547, 551, 776, 780, 784, 789, 793, 798, 801.

A claimant's residual functional capacity is the maximum work that she can perform despite any limitations. 20 C.F.R. §404.1545(a)(1). The assessment "must be ... based on all the relevant evidence in the record." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). As more fully discussed below, the ALJ's determination of Centeno's residual functional capacity is supported by substantial evidence.

### A. The ALJ Addressed Centeno's Deficits with Concentration, Persistence, or Pace.

Centeno argues that the ALJ's limitations – to simple, routine tasks with occasional changes in the work setting – do not account for her deficits with concentration, persistence, or pace (CPP). (ECF No. 10 at 17.) She notes that all of her providers opined that she would be excessively "off task" and work at substantially less than the pace of an average employee – limitations that the vocational expert acknowledged would be work preclusive. (ECF No. 18 at 5 (citing R. 752-56, 760-62, 757-59, 75-76).) Because the ALJ appropriately accounted for Centeno's limitations in concentration, persistence, or pace, this argument fails.

"Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.00C(3). In finding Centeno had a moderate limitation with regard to concentrating, persisting, or maintaining pace, R. 31, the ALJ factored in Centeno's complaints regarding memory impairment in relation to her medications, as well as her reports of decreased concentration, R. 39. He further noted that her mental status examinations continuously showed her thought processes, attention, and memory were unimpaired. R. 36-38 (citing B1F [R. 488-512], B2F [R. 513-58], B3F [R. 559-619], B15F [R. 849-1001].) The ALJ ultimately concluded that Centeno was "limited to performing simple, routine, and repetitive tasks with only occasional changes in the work setting and only occasional decision-making." R. 32. In *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021), the Seventh Circuit found that if one is "moderately" limited, that does not mean she is performing "bad" or "inadequately," but it means she functions "fair" in that area. Thus, the court concluded that "a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." *Id*. Given the finding in *Pavlicek* that a moderate CPP limitation was not inconsistent with Centeno's assessed residual functional capacity, this Court finds no error. *See also Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021) (stating there is no "categorical rule to the effect that an ALJ may never accommodate

'moderate' limitations in concentration, persistence, and pace with only a restriction to simple instructions and tasks").

### B. The ALJ Took Account of Centeno's Variable Functioning.

Centeno next argues the ALJ erred by acknowledging her variable functioning but then failed to account for it in the residual functional capacity. (ECF No. 10 at 18-20.) Centeno notes that her variable functioning was well documented and lists medical reports describing symptoms related to her anger and depression on various dates. *Id*. at 18-19. But it is not clear how Centeno's medical reports regarding her mood changes establish that her functional abilities varied in some way from one time period to the next.

The ALJ considered her mental impairments in his residual functional capacity assessment. R. 39. He explained in detail Centeno's reported struggles with stress, anger, and frustration, considered the opinions of her mental health counselor, and nonetheless concluded that her symptoms were not as severe as she reported. R. 36-40. He did not cite only to records that showed Centeno was doing well and ignore those that indicated otherwise. *Cf. Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). Noting that Centeno had some difficulty with severe mental impairments, he limited her to performing simple, routine, and repetitive tasks with only occasional changes in the work setting, occasional decision-making, no interaction with the public, occasional interaction with her co-workers and supervisors, and work that would allow individually performed work tasks. R. 38.

As discussed above, the ALJ sufficiently considered the conflicting evidence and provided valid reasons for declining to accept more limitations affecting Centeno's capacity to work. Because the ALJ addressed the variability of Centeno's mental health impairments and accounted for them in the residual functional capacity assessment, the Court finds no error.

### C. The ALJ Properly Addressed Centeno's Social Deficits.

Centeno next claims that the ALJ's residual functional capacity assessment did not adequately account for Centeno's social deficits. (ECF No. 10 at 20-21.) This argument also lacks merit.

"Social functioning" refers to a claimant's "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." 20 C.F.R. Pt. 404,

Subpt P, App. 1 §12.00C(2) (effective to Jan. 16, 2017).  This includes the "ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers."  *Id*.  " Social functioning in work situations may involve interactions with the public, responding appropriately to persons in authority (e.g., supervisors), or cooperative behaviors involving coworkers."  *Id*.

The ALJ found that, with regard to interacting with others, Centeno had a moderate limitation.  R. 31.  Centeno is correct that the ALJ noted only her interaction issues with her family members when specifically discussing her moderate limitation in social functioning.  R. 39.  However, the ALJ had previously considered Centeno's reports that "little things" made her mad, she had "confrontations" with people, "los[t] her temper" at church, and "avoid[ed] others to avoid conflict."  R. 33.  In so recognizing Centeno's complaints, both at the hearing and to her counselor, of high irritability and difficulty getting along with family members and others, the ALJ found that "social functioning issues [were] at play and, as such, ... incorporated such limitations into" Centeno's residual functional capacity.  *Id*. at 39.  The ALJ accounted for Centeno's difficulties in social functioning by finding that she could not work with the general public and was limited to occasional interaction with her co-workers and supervisors.  R. 32.  In declining to assess a greater impairment in mental functioning, the ALJ explained that many of Centeno's mental status examinations were in the normal limits and she was "often noted to be pleasant, cooperative, and able to establish rapport with others."  R.  39.  It is not the role of this Court to re-weigh the evidence or substitute its judgment for the ALJ's.  *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).  The ALJ appropriately incorporated his findings regarding Centeno's social functioning deficits into the residual functional capacity assessment.

### III. ALJ's Conclusion that Centeno's Subjective Statements Were Not Entirely Consistent Is Supported by Substantial Evidence.

Centeno's final argument is that the ALJ misconstrued the record in concluding that her subjective statements were "not entirely consistent."  (ECF No. 10 at 21-22.)  This argument also fails.

The ALJ found that Centeno's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.  R. 33.  Centeno asserts this conclusion constitutes

reversible legal error because many of the limitations Centeno testified to (e.g., bad days where she is in bed three times per week, a propensity for verbal outbursts that she cannot control, sometimes breaking things or slamming doors in anger, and a need to lie down for three hours during the daytime) would – according to the vocational expert – preclude the performance of the jobs the ALJ relies on to deny her claim. (ECF No. 10 at 22.)

When evaluating a claimant's subjective statements about the intensity and persistence of her symptoms, the ALJ must often, as here, make a credibility determination concerning the limiting effects of those symptoms. *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). Review of an ALJ's symptom evaluation is highly deferential. *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021) (court will overturn ALJ's credibility determination only if "patently wrong"); *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("As long as the ALJ's decision is supported by substantial and convincing evidence, it deserves this court's deference."). If a claimant's statements regarding her symptoms and limitations are not substantiated by objective medical evidence, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record by considering a variety of factors, including the claimant's daily activities; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes; and other treatment the claimant has received for relief of the pain or other symptoms. SSR 16-3p (applicable to determinations made on or after March 28, 2016). "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id*.

In this case, the ALJ considered the subjective statements made by Centeno at the administrative hearing, including her reports of chronic pain, worsening moods, and not sleeping well at night. R. 33. The ALJ also considered Centeno's reports to her health care providers regarding her irritability, confrontations with people, and issues related to her memory and concentration. R. 31. The ALJ detailed numerous treatment notes and diagnostic findings from September 2015 through August 2018 related to Centeno's complaints of chronic pain and mental impairments. R. 33-38 (citing primary care treatment notes B1F [R. 488-512], B3F [R. 559-619], B9F [R. 681-720], B14F [R. 805-48], B15F [R. 849-1001]; pain management treatment notes B2F [R. 513-58], B10F [R. 721-51], B13F [R. 775-804]; rheumatology

consultation notes B4F [R. 620-53]; orthopedic evaluation B5F [R. 654-55]; psychological report B6F [R 657-65]; imagining examinations B12F [R. 764-74]). He then provided ample reasons for discounting her claims regarding the intensity, persistence, and limiting effects of her symptoms. *Id*. For instance, pain management notes indicated Centeno's medication allowed her to function and complete her activities of daily living. R. 34-35 (citing B2F [R. 513-58], B3F [R. 559-619], B10F [R. 721-51], B13F [R. 776-804]). At numerous examinations, Centeno exhibited normal and intact balance, coordination, and gait. R. 34-35 (citing B2F [R. 513-58]). Additionally, although treatment notes related to Centeno's mental impairments indicated ongoing issues with anger and depression, her mental status examinations continuously showed her thought processes, attention, and memory were unimpaired. R. 36-38 (citing B1F [R. 488-512], B2F [R. 513-58], B3F [R. 559-619], B15F [R. 849-1001].)

This Court cannot find the ALJ's determinations as to Centeno's subjective complaints to be "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). Thus, the ALJ's explanation for discounting Centeno's subjective statements regarding her symptoms and limitations was adequate to satisfy the substantial evidence standard.

## CONCLUSION

For all of the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence and Centeno has not demonstrated that the ALJ committed reversible error. Accordingly,

IT IS ORDERED that the Commissioner's decision is AFFIRMED. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on January 24, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge